## HOWARD *v.* GRANT.

### Opinion delivered April 14, 1913.

1. DESCENT AND DISTRIBUTION—MERGER OF LEGAL AND EQUITABLE ESTATE. —When the equitable and legal estates in land unite in the same person the equitable title is merged in the legal estate which descends according to the rules of law, the legal title alone determining the course of descent and succession. (Page 599.)

2. DESCENT AND DISTRIBUTION—BOND FOT TITLE—ANCESTRAL ESTATE.— Where one G purchased school lands under a bond for title therefor, and died before the payment of the purchase money, but the purchase money was paid by his legal representative, and a deed made to his heirs, consisting of only one child, a daughter, the heir inherited the equitable estate from her father, and the entire amount of the purchase money being paid by G's legal representative, the heir succeeded also to the legal title to the land. *Held*, also, the estate taken by the daughter was ancestral, and she and her heirs took the estate to the exclusion of her brothers and sisters of the half-blood. Act February 3, 1843, sections 201 and 2657, Kirby's Digest; Act of January 9, 1845; Act of January 15, 1857. (Page 600.)

Appeal from Jackson Chancery Court; *Geo. T. Humphries,* Chancellor; affirmed.

STATEMENT BY THE COURT.

Appellants brought suit in equity for the possession of certain lands and to cancel certain deeds and a will as a cloud upon their title. James Green purchased the lands in controversy, a part of the school lands of the State, on December 28, 1844, executed his promissory note for $80 in payment therefor, due ten years after date, and obtained a certificate of purchase for said land. He died seven years thereafter, having paid the interest,· but not the principal of the note, and leaving surviving him Eliza Green, his widow, and three children, two of whom died in infancy, without issue, and James, commonly called Jessie. On December 29, 1852, his widow, Eliza Green, married Lovein Howard, and of this marriage seven children were born, all dying in infancy without issue except these appellants. On January 21, 1857, six years after the death of James Green, Lovein Howard, the husband of his widow, paid the purchase money due on the land, surrendered the James Green certificate of purchase and a deed was executed by the State to the heirs of James Green, who, at the date thereof, consisted solely of Jessie Green, then about five years old, and living with her mother and step-father, which she continued to do until her marriage to Lowry Grant, at the age of about twenty. The receipts of the Commissioner of School Lands for the James Green certificate of purchase and the purchase money for the land are as follows:

"January 21, 1857. Received of Lovein Howard, James Green's certificate of purchase, he having paid the interest and principal. I am to procure a patent from the Governor in the name of James Green, deceased. Joseph Carl, Common School Commissioner."

"January 21, 1857. Received of Lovein Howard as agent of Eliza Howard, legal representative of James Green, deceased, ninety-one dollars fifty-three cents in full interest and principal for the purchase of Lot No. 15, being the southwest quarter of the southeast quarter; sold to him by Shelly Smith, as School Commissioner of

township 12, range 3 west, December 28, 1855, being a part of the sixteenth section. Joseph Carl, Common School Commissioner."

"Jacksonport, March 24, 1845. Received of J. Green twenty-eight dollars and eighty cents interest in full on lot No. 15 of section 16, township 12, range 3 west. Shelly Smith, Commissioner."

The note given by Green for the purchase money was also in evidence, bearing four different endorsements of receipt of payment of different amounts and interest on the back, signed by the School Commissioner. The deed from the State, conveying the land recites:

"And whereas, it appears from said transcript that the heirs of said James Green have become and are purchasers of southwest quarter of southeast quarter of section 16, township 12, range 3 west, and that full payment has been made by the said heirs of James Green, etc."

The chancellor found that the estate was ancestral, that appellants were not of the blood of the ancestor from whom it came, and dismissed their complaint for want of equity. From his decree this appeal comes.

*John W. & Joseph M. Stayton* and *Ira J. Mack,* for appellants.

Where one acquires the equitable title to land by descent and the legal title by deed from one outside of the blood, he takes the land, not by descent, but by purchase, and the title so acquired is a new acquisition and not an ancestral estate. 31 Ark. Law Rep. 136.

The evidence is not sufficient to show that balance of the purchase money was paid by James Green's estate, and that the estate was, therefore, ancestral. The receipt reciting that "Lovein Howard as agent of Eliza Howard, legal representative of James Green, deceased," had paid off the note, is not sufficient to establish an administration nor the fact that this money came from assets of James Green's estate before distribution. 2 Mackey, 70, 80; 125 N. Y. 411; 100 Mich. 214-216. See

also on the proposition that the land was a new acquisition in Jessie Green, 82 Pac. 585; 6 N. E. (Ind.), 910; 18 O. St. 311; 94 Ind. 482; 28 Ind. 74; 89 N. E. 509; 15 R. I. 204.

*Jos. W. Phillips,* for appellee.

Under the law then in force, the certificate of purchase received by James Green had the effect of a bond for title. English's Dig., p. 923, § 15. See also Rev. Stat., ch. 4, p. 92, § 161; Kirby's Dig., § 201. Under the law, no person could acquire title to school lands except the purchaser or some person to whom he assigned the right, or the heirs of the purchaser.

The deed was executed to the heirs of James Green; they take in succession. Jessie Green took legal title to the land by inheritance, with all the rights and incumbrances as if it had regularly descended, subject to her mother's right of dower. Gould's Dig., p. 998, § 58; 44 Ark. 452; 18 Law. Ed. (U. S.), 925; Rev. Stat. (Ark.), 336, § 1; *Id.* 339, § 18; Kirby's Dig., § § 2645, 2657. She took by virtue of being of the blood of James Green and not otherwise. 15 Ark. 586. And the estate is ancestral.

KIRBY, J., (after stating the facts). Appellants contend that the land was a new acquisition and not an ancestral estate and to be owners thereof, as half brothers of Jessie Green, the sole surviving heir of James Green, when the deed from the State conveying the land to the heirs of James Green was made. Appellees claim the land under certain deeds and a will and that the lands are an ancestral estate and appellants, not being of the blood of the ancestor from whom the estate came are without right or title thereto.

At the time James Green purchased the land in controversy, executed his promissory note for the purchase money and received the certificate of purchase therefor on December 28, 1844, the laws relating to such certificate provided:

"The certificate of purchase mentioned in the preceding sections shall have the force and effect of a bond

for the conveyance of the lands therein mentioned and shall entitle the purchaser and his heirs and assigns on payment of the purchase money named in the certificate with all interest which may then be due on account of said purchase, to a deed from said commissioner for the land described in said certificate." Act February 3, 1843, English's Digest, page 923, § 15.

Another statute provided: "If any person die, having purchased lands and tenements in his lifetime and not having completed the payment nor devised such lands and tenements, nor provided for the payment thereof by will, and the completion of such payment would be beneficial to the estate, and not injurious to creditors, the executor or administrator may, by order of the court of probate, complete such payment out of the assets in his hands, and such lands and tenements shall be disposed of as other real estate." Rev. Stat., chap. 4, § 161; Kirby's Digest, § 201.

Another statute was passed on January 9, 1845 legalizing and confirming all sales of sixteenth section school lands theretofore made and the deed to the heirs of James Green was made under the authority of the following act, approved January 15, 1857:

"From and after the passage of this act, if any person or persons, who shall have purchased any portion of the sixteenth section of school lands, from the Common School Commissioner, of any of the counties of this State, and executed note with good security therefor, and received a bond for title from such commissioner, shall die before the payment is fully made, in that event, if the executor, administrator, or guardian, or legal representative, of such deceased person, shall pay, or cause to be paid, the balance, if any, that shall be due to the School Commissioner on said purchase, and upon the certificate of the Common School Commissioner of the proper county, that the whole of the purchase money, with all interest due thereon had been fully paid, the Governor of this State shall forthwith execute a patent deed, as is now required by law, to the heirs at law of

such deceased person; which land, thus conveyed to the said heirs, shall stand charged with the amount of money, necessarily advanced to the school fund, in order to procure title, and shall, in other respects, be chargeable with the rights and incumbrances, that would have attached had it descended regularly to the same heirs.''

Under this last act the balance of the purchase money for these lands was paid by Lovein Howard, then husband of the widow of James Green, and the deed executed to the heirs of James Green, Jessie Green, at the time, being the sole heir. The receipt for the purchase money reads, ''Received of Lovein Howard, as agent of Eliza Howard, legal representative of James Green, deceased,'' etc. And the State's deed to the heirs of James Green recites that it appears that they have become purchasers of the lands and ''that full payment has been made by the said heirs of James Green.''

Appellants contend that this recital of the deed shows the payment of the purchase money by the heirs, and the estate became a new acquisition in Jessie Green upon the deed from the State within the doctrine announced in *Hill* v. *Heard,* 148 S. W. 254, 104 Ark. 23, and descended to them as her half-brothers upon the death of Jessie Green and the termination of the husband's curtesy interest.

Unquestionably, the minor child or children inherited the father's equitable title or interest to these lands upon his death and the legal title thereto was afterwards conveyed by the State to the heirs of James Green, Jessie Green being the only one surviving at the date of this conveyance. It is no longer questioned that when the equitable and legal estates in land unite in the same person the equitable title is merged in the legal estate which descends according to the rules of law, the legal title only determining the course of descent and succession. *Hill* v. *Heard, supra.* In that case, the father had purchased lands and gone into possession under a bond for title and died before the payment of the major part of the purchase money which was paid by the mother

out of her separate property and the deed afterwards taken conveying the lands to the son and heir and this court held that the two estates came by different rights, the equitable by inheritance and the legal estate by purchase; that the equitable was merged into the legal, which determined the course of descent or succession, and that the legal estate being acquired by purchase the estate was not ancestral, but a new acquisition and descended upon the death of the owners to the brothers and sisters of the half-blood.

In the instant case, the ancestor purchased these lands of the State and took a certificate of purchase, which was in effect a bond for title, or contract for conveyance upon the payment of the purchase money, and died in possession without the payment thereof. The purchase money was afterwards paid, the receipt therefor by the school commissioner showing the person paid it as agent of Eliza Green, "legal representative of James Green, deceased," and the deed was executed to the heirs of James Green, under authority of the law in such cases above set forth. This same law provides that land thus conveyed shall stand charged with the amount of money necessarily advanced under its provisions in order to procure the title and shall in other respects "be chargeable with the rights and encumbrances that would have attached had it descended regularly to the heirs."

It was the evident purpose of the law to devolve upon the heirs of the person purchasing school lands under a bond for title therefor and dying before the payment of the purchase money, upon the conveyance thereof to his heirs, after payment of the purchase money for same by his legal representative, the same rights they would have inherited from such person if the purchase money had been paid in his lifetime and the deed conveying the lands made, and in the same way, subject only to the charge for the balance of the purchase money so remaining unpaid at his death and afterwards paid by his legal representatives.

The recital of the State's deed means no more than that the purchase money was received in accordance with the statute, and, as stated in the school commissioner's receipt, from the legal representative of James Green, deceased. Jessie Green inherited the equitable estate of the father, and the entire purchase money being paid by his legal representative, succeeded to the legal title thereof, on account of being his heir and under the law and the entire estate came to her on the part of the father. Section 2657, Kirby's Digest; *Hill* v. *Heard, supra.*

The estate being ancestral, and appellants not being of the blood of the person from whom it came, nor in line of succession on that account, acquired no title whatever upon the death of Jessie Green.

Having reached this conclusion, it becomes unnecessary to determine the rights of appellees, since appellants must recover, if at all, upon the strength of their own title, and, having none, necessarily their suit must fail.

The decree is affirmed.